IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00977-ZLW-OES


RICHARD STANLEY ROOT,

Plaintiff,

v.

BILL OWENS,
JOSEPH ORTIZ,
GARY WATKINS,
BARNEY BAUER,
ALAN MILBURN,
ANTHONY A. DeCESARO, and
LCF MEDICAL DEPARTMENT PERSONNEL,

Defendants.

---

## RECOMMENDATION FOR PARTIAL DISMISSAL

**Entered by O. Edward Schlatter, United States Magistrate Judge**

### INTRODUCTION

Under the Special Order of Reference To Magistrate Judge issued in this matter pursuant to D.C.COLO.LCivR 72.1, this case has been referred to me for purposes of determination of nondispositive matters and for making a recommendation on the dispositive matters of this lawsuit.  The parties' rights to seek review or reconsideration of this Recommendation, by filing objections within ten days, are attached hereto, and are entitled "Advisement Under Fed. R. Civ. P. 72."

### BACKGROUND

Plaintiff is an inmate with the Colorado Department of Corrections ("CDOC"),

who was housed at the Limon Correctional Facility ("LCF") at times pertinent to this lawsuit.  Plaintiff is currently incarcerated at the San Carlos Correctional Facility in Pueblo, Colorado.  On April 29, 2004, he submitted to the court a Prisoner Complaint claiming violations of his First, Eighth, and Fourteenth Amendment rights.  The pleading was reviewed under the initial review procedures mandated by 28 U.S.C. § 1915A, and it was determined that plaintiff had failed to assert personal participation by the named defendants.  The plaintiff was directed to file an Amended Complaint, which he did on August 20, 2004.

In the Amended Complaint, plaintiff sets forth three claims.  In the first claim, he alleges that conditions in Unit Six where he was housed were dangerous due to the noise levels in the pod and the tension created among inmates by the noise levels.  He asserts that he informed defendants Owens, Watkins, and Bauer about the conditions. He also contends that, as a result of defendant Milburn informing other inmates and prison staff about the complaints he made regarding the noise made by other inmates, he was pushed down a flight of stairs by a group of inmates.

In the second claim, plaintiff asserts that, in violation of his Eighth Amendment rights, he was denied medical treatment by defendant LCF Medical Department Personnel until at least nine days after he was pushed down the stairs.  In the third claim, he alleges that defendant DeCesaro violated his First and Fourteenth Amendment rights when he failed to consider the merits of his grievance simply because plaintiff did not receive a response at the second level of appeal.  Plaintiff

seeks declaratory and injunctive relief, and compensatory, punitive and nominal[1]
damages.

On February 3, 2005, defendant DeCesaro filed his Motion For Summary
Judgment Or In The Alternative Motion To Dismiss Complaint, arguing that he has
absolute judicial immunity by virtue of his duties as a Step 3 Grievance Officer, that he
has no authority or ability to eliminate any constitutional deprivations if they exist, and
that he did not authorize, supervise, or participate in the conduct which gave rise to the
constitutional deprivation claimed by the plaintiff.  Initially, plaintiff responded to
defendant DeCesaro's motion by arguing that the defendant did not have judicial
immunity because he was/is not an official or an employee who was acting under the
direct orders or supervision of judges.  See Docket #43.  Plaintiff also argued that
simply by virtue of his position, defendant DeCesaro has an obligation to compel
CDOC personnel to act consistent with state and federal laws, and that the defendant
did participate in actions which amounted to constitutional violations.  Id.  Plaintiff then
requested an extension of time to further respond to the motion, which was granted.  In
his supplemental response to the motion, plaintiff concedes that defendant DeCesaro
may be correct in his motion, but indicates that he thinks the situation is unfair.  See
Docket #65.

On February 22, 2005, defendant Owens filed his Motion To Dismiss, arguing
that plaintiff's official capacity claims against him are barred by Eleventh Amendment

---

[1]Plaintiff has requested nominal damages of $500.00 against each defendant.
However, in Colorado, as a matter of law, nominal damages are one dollar.  Colo. Inv.
Servs., Inc. v. Hager, 685 P.2d 1371, 1375 (Colo.Ct.App. 1984).

immunity, that the individual capacity claims against him fail due to lack of personal

participation, that the plaintiff fails to state a claim of medical indifference against him,

and, alternatively, that he is entitled to qualified immunity.  Plaintiff was allowed an

extension of time in which to respond to the motion, and subsequently filed his

response on April 28, 2005.  In the response, plaintiff essentially concedes that the

defendant's motion is correct, and indicates that he does not object to the dismissal of

this defendant.  <u>See</u> Docket #68.

Finally, on March 3, 2005, defendants Ortiz, Watkins and Milburn filed their

Motion To Dismiss.  In the motion, they argue that plaintiff has failed to exhaust his

administrative remedies, and that the claims against them in their official capacities are

barred by Eleventh Amendment immunity.  Defendants Ortiz and Watkins also argue

that they are entitled to qualified immunity.  Plaintiff has strenuously objected to the

defendants' motion.

## DISCUSSION

**I.    Defendant DeCesaro's Motion For Summary Judgment And/Or Motion To Dismiss Complaint.**

**A.    Standard of Review.**

Defendant Decesaro has filed a "Motion For Summary Judgment Or In The

Alternative Motion To Dismiss Complaint."  Summary judgment is appropriate "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there are no genuine issues as to any material fact

and that the moving party is entitled to judgment as a matter of law."  <u>Jenkins v. Wood</u>,

81 F.3d 988, 990 (10th Cir. 1996) (*quoting* Fed.R.Civ.P. 56(c)).  The court views the evidence in the light most favorable to the party opposing summary judgment.  Jenkins, 81 F.3d at 990.

The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the nonmoving party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party to establish the existence of an essential element of the claims on which they bear the burden of proof at trial.  Id.  "While the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim."  Jenkins, 81 F.3d at 990.

To satisfy his or her burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial.  Ford v. West, 222 F.3d 767, 774 (10th Cir. 2000) (*quoting* McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998)).  In order to successfully resist summary judgment, there must be sufficient evidence on which a jury could reasonably find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).  "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant."  Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).  The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  Adler v. Wal-Mart Stores, Inc.,

144 F.3d 664, 670 (10th Cir. 1998).

Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957)(footnote omitted); *accord* Meade v. Grubbs, 841 F.2d 1512, 1526 (10th Cir. 1988). In reviewing the sufficiency of the complaint, a court must presume that the plaintiff's factual allegations are true, and construe them in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984); *accord* Meade, 841 F.2d at 1526.

Because the plaintiff is proceeding without counsel, the court must construe his pleadings and other filings liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the court should not be the *pro se* litigant's advocate. Hall, 935 F.2d at 1110.

**B.   Nature of Defenses Raised.**

In his Amended Complaint, plaintiff alleges that he is suing defendant DeCesaro in his individual and official capacities. AMENDED COMPLAINT, Docket #16, p. 2/A. In his pending motion, defendant DeCesaro indicates that he "is an independent contractor who contracts with CDOC." MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND/OR MOTION TO DISMISS COMPLAINT ("DEFENDANT'S BRIEF IN SUPPORT"), Docket #36, p. 5. He has raised the defense of judicial immunity, which is an individual capacity defense and unavailable in official capacity suits. See Hafer v. Melo, 502 U.S.

6

21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); Turner v. Houma Municipal Fire and Police Civil Service Board, 229 F.3d 478, 482-83 (5th Cir. 2000) (personal liability is not involved in an official capacity suit; therefore, individual capacity defenses, such as quasi-judicial immunity, are unavailable).  The defendant also raises the defenses of lack of authority and lack of personal participation, which traditionally are individual capacity defenses.  "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment."  Kentucky v. Graham, 473 U.S. 159, 167 (1985).

Defendant DeCesaro, who is representing himself, does not clearly delineate his arguments for dismissal of the claims against him as addressing either or both the official capacity and individual capacity claims against him.  Rule 7(b)(1) Fed.R.Civ.P. requires that all motions must state "with particularity" the grounds for relief being sought and the relief being requested.  Rule 7 is designed to give the court notice of the grounds and prayer of a motion, and to provide the court with enough information to process the motion correctly.  See  Registration Control Systems, Inc. v. Compusystems, Inc., 922 F.2d 805, 808 (Fed.Cir. 1990).  Although the court must liberally construe *pro se* filings, *pro se* status does not excuse the obligation of any litigant to comply with the same rules of procedure that govern other litigants.  See Green v.  Dorrell, 969 F.2d 915, 917 (10th Cir. 1992); Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).

7

Because the record before this court is insufficient to determine the exact nature of this defendant's relationship with the governmental entity involved, with regard to Eleventh Amendment immunity, dismissal of plaintiff's claims against defendant DeCesaro in his official capacity do not appear to be addressed by the defendant's motion and therefore, should remain pending.

**B.    Judicial Immunity.**

Defendant DeCesaro contends that the judicial nature of his actions entitles him to judicial immunity, which is an absolute immunity defense against individual capacity claims.  See Nixon v. Fitzgerald, 457 U.S. 731, 746 (1982) ("the especially sensitive duties of certain officials – notably judges and other prosecutors – require[ ] the continued recognition of absolute immunity").   In determining whether a government official has absolute immunity in a § 1983 action, the Supreme Court has adopted a two-pronged approach.  The initial inquiry is whether there is a historical or common-law basis for the immunity in question.  Mitchell v. Forsyth, 472 U.S. 511, 521 (1985).  If a historical, common-law basis for immunity does not exist, the court must expand its inquiry to determine whether the official functions in a manner comparable to officials shielded by immunity when § 1983 was passed.  Cleavinger v. Saxner, 474 U.S. 193, 197 (1985) (immunity turns on whether function of official can be classified as "quasi-judicial" in nature).  Before quasi-judicial immunity can be extended, the court must evaluate the particular duty which was performed and focus on the function of the public official, and not his or her position.  See Briscoe v. LaHue, 460 U.S. 325, 342 (1983); see, also, Cleavinger, 474 U.S. at 197 ("[a]bsolute immunity flows not from rank

8

or title or 'location within the Government,' . . . but from the nature of the responsibilities of the individual official").

In <u>Saavedra v. City of Albuquerque</u>, 73 F.3d 1525 (10th Cir. 1996), the Tenth Circuit noted:

> Absolute immunity applies, therefore, where (1) the defendant's duties and the procedures employed are functionally comparable to those of a court of law; (2) maintenance of the impartiality and effectiveness of the adjudicatory process in question requires eliminating any threat of personal liability; (3) the defendant's actions are more likely than other governmental actions to result in disappointed parties' institution of lawsuits; and (4) procedural safeguards exist and are adequate to correct or prevent erroneous or intentional constitutional violations.

<u>Id.</u> at 1530 (<i>citing</i> <u>Horwitz v. Board of Medical Examiners</u>, 822 F.2d 1508, 1513 (10th Cir. 1987)); <u>see</u>, <u>also</u>, <u>Cleavinger</u>, 474 U.S. at 202; <u>Butz v. Economou</u>, 438 U.S. 478, 511 (1978).

A review of the record demonstrates that defendant DeCesaro functions as the final appellate level within the prison grievance system.  While prisoners do not have the right to counsel in these proceedings, and it does not appear that the process is classically adjudicatory in nature, there are distinct similarities to the judicial appeals process. Much like the briefing process in appellate practice, in the Step III grievance process prisoners are allowed to present arguments, to include reference to any evidence or authority, on the grievance form to be reviewed by the Grievance Officer. <u>See</u> DEFENDANT'S BRIEF IN SUPPORT, Docket #36, Exh. A.  Also, similar to an appellant in appellate practice who must provide an appellate tribunal with the record being appealed from, a prisoner must provide the Step III grievance officer with documentation of the appropriate prior step in the grievance process.  <u>Id.</u>  The Step III

grievance officer is an independent contractor, to ensure that their findings are impartial. DEFENDANT'S BRIEF IN SUPPORT, Docket #36, p. 5.

As evidenced by this action, and many others filed in this court, often the unsuccessful party will file a lawsuit against the grievance officer.  Therefore, the strong likelihood of lawsuits which present personal liability could deter others from desiring to perform these functions and might produce a hidden bias in favor of aggrieved parties.  Defendant DeCesaro alleges that grievance regulation AR 850-04 contains safeguards to prevent erroneous and intentional constitutional violations.  Id.

The record demonstrates that defendant DeCesaro does not function merely as a compliance officer.  Defendant DeCesaro indicates that he must determine the truthfulness of the parties to the process and that the basis for his recommendations are the application of current case law to the existing factual basis.  Id. at pp. 4-5. These are matters outside the issue of mere regulatory compliance.   Plaintiff has demonstrated no viable argument or evidence that would remove the defendant from the protections of quasi-judicial immunity. Therefore, notwithstanding the plaintiff's contrary assertions, all of the factors for the application of quasi-judicial immunity are present here.  Defendant DeCesaro should be free to exercise his discretion uninhibited by a looming threat of personal liability.  Accordingly, granting defendant Decesaro quasi-judicial immunity against the individual capacity claims of the plaintiff is warranted, and his Motion For Summary Judgment in this regard should be granted.

C.    Lack of Authority.

Plaintiff argues that defendant DeCesaro "has a legal[,] moral and ethical

obligation to compel CDOC to act in accordance with state, and federal laws regarding grievance resolutions and to confer with administrative heads and the Executive Director regarding legalities of the administrative grievance procedure and resolutions." MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFF'S MOTIONS TO DENY AND OR STAY DEFENDANT DECESARO'S MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVE MOTION TO DISMISS COMPLAINT, Docket #42, p. 6.  However, as demonstrated by the defendant, the CDOC's Administrative Regulation ("AR") 850-04 provides that the defendant can (1) investigate the claims of offenders and determine whether or not the claims have validity, and (2) deny the grievance, thereby terminating the grievance process, or (3) if there is merit to the offender's claim, make a recommendation to the Executive Director of CDOC regarding the grievance.  See DEFENDANT'S BRIEF IN SUPPORT, Docket #36, Exh. A. pp. 6-7.  The regulation also clearly provides that:

> The grievance officer shall not be involved in the formulation of [CDOC] policy, nor shall he/she be involved in the implementation of any policy or practice that affect conditions of confinement in a correctional facility.

Id. at Exh. A, p. 7.

While the plaintiff may feel that defendant DeCesaro should champion loftier goals of humanity in the position that he holds, the fact is that the defendant holds only the authority that he is granted by the regulations governing his position.  Plaintiff fails to demonstrate any evidence or well-pled facts to indicate, in light of the parameters of defendant's jurisdiction as set forth in AR 850-04, that this defendant possesses the ability or authority in his position as a Step 3 Grievance Officer to compel enforcement of any recommendation to either a CDOC facility or to a private facility that is housing

Colorado inmates.  Accordingly, summary judgment in favor of defendant DeCesaro in this regard is appropriate.

> **D.      Lack of Authorization, Participation or Supervision in Alleged Constitutional Violation.**

Defendant contends that because he only had authority to review grievances and make recommendations to the Executive Director of the CDOC regarding disposition of the grievance matters, he neither participated in nor authorized any denial of plaintiff's constitutional rights.  To hold this defendant personally liable for the constitutional violations alleged by the plaintiff, there must be a causal connection between his actions and the deprivation alleged by the plaintiff.  Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990).  In this case, defendant DeCesaro determined that the plaintiff had not exhausted his administrative remedies, because he failed to provide evidence of his Step II grievance and because the time constraints for the filing of the matter had been violated.  See AMENDED COMPLAINT, Docket #16, Exh. 3.  Plaintiff had represented to the defendant, on the Step III form, that he was filing the grievance without the Step II grievance information and outside of the time constraints "due to LCF staff and administrators failure to respond to the step II filed Monday, 17 March 2003."  Id. at Exh. 3/A.  The recommendation of the defendant for denial of the plaintiff's grievance, on the grounds which were cited, was apparently heeded and relied upon in the disposition of the grievance.

Based upon the record herein, there exists a question of fact that the defendant was sufficiently involved in the decision-making process to allow him to be held

12

personally liable for the constitutional violations alleged by the plaintiff. Id. ("The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.") (*citing* Conner v. Reinhard, 847 F.2d 384, 396-97 (7th Cir. 1988. However, prison inmates do not have a constitutionally protected right to a grievance procedure. See, e.g., Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 138 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."). Prison officials' adoption of a procedural system for handling inmate appeals is not sufficient to create an independent substantive right to an appeal. See Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983).

"A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by" the Constitution. Buckley v. Barlow, 977 F.2d 494, 495 (8th Cir. 1993) (*citing* Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982)). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim, 461 U.S. at 250.

Because a prison grievance procedure does not confer any substantive constitutional right upon prison inmates, prison official's failure to comply with the grievance procedure is not actionable. See Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994); see, also, Olim, 461 U.S. at 250 (due process claim lacks merit when

no deprivation of a substantive right has been alleged).  Further, plaintiff's right to

petition the government for redress is the right of access to the courts, a right that is not

compromised by the prison's refusal to entertain a grievance.  See Flick v. Alba, 932

F.2d 728, 729 (8th Cir. 1991).

Finally, the Equal Protection Clause does not require that all people be treated

identically.  Hendking v. Smith, 781 F.2d 850, 851 (11th Cir. 1986) *quoting* Zeigler v.

Jackson, 638 F.2d 776, 779 (5th Cir. 1981); see, also, United States v. MacCollom, 426

U.S. 317 (1976) (neither the Equal Protection Clause of the Fourteenth Amendment,

nor the counterpart equal protection requirement embodied in the Fifth Amendment,

guarantees "absolute equality or precisely equal advantages"). With regard to an equal

protection claim, the plaintiff must demonstrate that he was treated differently as

compared to a similarly situated person.  See City of Cleburne v. Cleburne Living Ctr.,

473 U.S. 432, 439 (1985).  Plaintiff has failed to allege any facts or facts from which it

can be inferred to demonstrate that he was treated differently.   Additionally,

> A plaintiff in an equal protection action has the burden of demonstrating discriminatory intent.  It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor.

Watson v. City of Kansas City, Kan., 857 F.2d 690, 694 (10th Cir. 1988) (citations

omitted).  Plaintiff has failed to provide any factual basis to demonstrate a

discriminatory intent by defendant DeCesaro in this regard.

###     E.     Conclusion.

Defendant DeCesaro has demonstrated that there is no genuine issue of

14

material fact and that plaintiff has failed to state a claim upon which relief can be granted with regard to the claims plaintiff brings against him.  Plaintiff has not shown any set of circumstances which would allow him to prevail upon his claims against this defendant in his individual capacity.  Accordingly, defendant's motion should be granted.

## II.   Defendant Owens' Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6).

### A.   Standard of Review.

As noted previously, Rule 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A review under Rule 12(b)(6) is conducted in a light most favorable to the plaintiff, and because of plaintiff's *pro se* status, his pleadings will be broadly construed.

Notable in defendant Owens' motion is the fact that he has raised the issue of the official capacity claims against him being barred under principles of sovereign immunity and also, as an alternative argument with regard to the individual capacity claims against him, that he is entitled to qualified immunity.  "[A] motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)."  Neiberger v. Hawkins, 150 F.Supp.2d 1118, 1120 (D.Colo. 2001).  Additionally, a motion to dismiss based on qualified immunity is treated as a motion to dismiss for lack of subject matter jurisdiction. See, Meyers v. Colo. Dep't of Human Services, 2003 WL 1826166 (10th Cir. 2003) (unpublished opinion).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."

15

Groundhog v. Keeler, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing

subject matter jurisdiction is on the party asserting jurisdiction.  See Basso v. Utah

Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974).  Accordingly, plaintiff in this case

bears the burden of establishing that this court has jurisdiction to hear his claims.

   "Motions to dismiss pursuant to Rule 12(b)(1) may take two forms."

Amoco Production Co. v. Aspen Group, 8 F.Supp.2d 1249, 1251 (D.Colo. 1998).  First,

a party may attack the facial sufficiency of the complaint and the court must accept the

allegations of the complaint as true.  Id.  Second, a party may attack the factual

assertions regarding subject matter jurisdiction through affidavits and other documents

and the court "has wide discretion to allow affidavits, other documents and a limited

evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  Holt v.

United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  "A 12(b)(1) motion . . . can include

references to evidence extraneous to the complaint without converting it to a Rule 56

motion."  Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)  The defendant's

Motion To Dismiss does challenge the factual assertions underlying plaintiff's Amended

Complaint.

   While the arguments concerning sovereign and qualified immunity by defendant

Owens were not raised under Rule 12(b)(1), the court has a duty to determine subject

matter jurisdiction *sua sponte*.  See, Tuck v. United Servs. Auto. Ass'n, 859 F.2d 842,

844 (10th Cir. 1988); see, also, Fed.R.Civ.P. 12(h)(3) ("[w]henever it appears by

suggestion of the parties or otherwise that the court lacks jurisdiction of the subject

matter, the court shall dismiss the action").

B.      **Official Capacity Claims.**

Defendant Owens argues, and plaintiff appears to concede, that because the

Eleventh Amendment would be a jurisdictional bar to a suit for damages against the

State of Colorado, see  Will v. Michigan State Police, 491 U.S. 58, 71 (1989), and the

defendant, in his official capacity, would be considered an arm of the state for Eleventh

Amendment purposes, see Id. at 70-71, plaintiff's claims against him, in his official

capacity, for damages are barred.  However, in his Amended Complaint, the plaintiff

does not seek only damages.  He also requests that the court award him certain

injunctive and declaratory relief.  Typically, when a private party sues a state officer for

prospective injunctive or declaratory relief from an alleged ongoing violation of the

Constitution or federal laws, the suit is not considered to be against the state itself and

the Eleventh Amendment does not apply.  See Ex Parte Young, 209 U.S. 123, 159-60

(1908); see, also, Timpanogos Tribe v. Conway, 286 F.3d 1195, 1205 (10th Cir. 2002).

Although the plaintiff phrases the relief he requests as declaratory and

injunctive, the reality with regard to the injunctive relief requested is that it is a claim for

monetary damages.  Plaintiff seeks medical examination and treatment of his alleged

injuries at the expense of the defendants, which is tantamount to telling the State how

to disburse funds in its treasury.  The declaratory relief sought by the plaintiff is not

prospective, but retroactive.  The precedent of this circuit supports the conclusion that

the Eleventh Amendment bars precisely this kind of suit.  See V-1 Oil Co. v. Utah State

Dept. of Public Safety, 131 F.3d 1415, 1422 (10th Cir. 1997) (Eleventh Amendment bars

claims for "retroactive monetary reimbursement" and for declaratory judgment that state

officials had violated federal law in the past); Johns v. Stewart, 57 F.3d 1544, 1553

(10th Cir. 1995).  Even if characterized as equitable in nature, such relief has more than

an ancillary effect on the state treasury and "is the practical equivalent of money

damages." ANR Pipeline v. Lafaver, 150 F.3d 1178, 1189 (10th Cir. 1989), *cert. denied*,

525 U.S. 1122 (1999).

Plaintiff's claims against defendant Owens in his official capacity are barred by

the Eleventh Amendment, and therefore, should be dismissed.

### C.      Lack of Personal Participation With Regard To All Claims.

In Paragraph 1 of Section C of his Amended Complaint, the plaintiff alleges that

defendant Owens, as well as other defendants, demonstrated deliberate indifference to

his safety by exposing him to an unreasonable risk of harm.  Paragraph 2 of Section C,

alleges that defendant Owens, as well as other defendants, was under a legal duty to

supervise government discipline and policies, and that he failed to properly train and

supervise subordinates.  The plaintiff specifically alleges that he sent defendant Owens

a letter on February 4, 2003, informing the defendant that there were tensions among

inmates at the LCF caused by noise levels in the housing pod resulting from inmates

slamming dominoes on tables.  Defendant Owens argues that these allegations fail to

establish the level of personal participation necessary to hold him personally liable for

the claims brought by the plaintiff.

The Tenth Circuit has said "[a] claim seeking personal liability in a civil rights suit

must be predicated on the defendant actor's personal involvement; there must be an

affirmative link to causally connect the actor with the alleged violation." Gates v.

18

Unified Sch. Dist., 996 F.2d 1035, 1042 (10th Cir. 1993) (citing Parratt v. Taylor, 451

U.S. 527 (1981)).  Moreover, when acts committed by a person under the supervision

of another are the predicate for a claim against the person in authority, the plaintiff

must allege and prove the supervisor "actually knew of and acquiesced in the [actor's]

behavior."  Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995).  Rumors or assertions

by third parties will not provide the actual knowledge required as a predicate for liability

under § 1983.  Id. at 490-91.

Plaintiff concedes that "defendant Owens may not have actually received or

reviewed the letter plaintiff mailed to him on February 04, 2003, . . . ."  ANSWER, Docket

#68, p. 2.  As stated by the defendant:

> There is no allegation that [defendant] Owens was personally involved in
> any of the incidents alleged in the [Amended] Complaint.  Indeed, there is
> no allegation that [defendant] Owens ever met [plaintiff] or had any
> contact with him or that [defendant] Owens had any actual involvement in
> the management of the [LCF] other than through his position as Governor
> of the State of Colorado. . . . [Plaintiff] alleges only that the letter
> contained information concerning tension among inmates arising from
> noise levels in a particular pad at the [LCF] from domino and/or card
> games. . . . [plaintiff's] allegations concerning the February 4, 2003 letter
> do not establish that [defendant] Owens actually received or reviewed the
> letter.

MOTION TO DISMISS DEFENDANT OWENS PURSUANT TO FED.R.CIV.P. 12(B)(6), Docket

#44, pp. 6-7.

Plaintiff's entire action against defendant Owens is founded upon a theory that

he is responsible to the plaintiff simply because of the position the defendant holds.

Accordingly, the plaintiff has failed to allege the personal participation necessary to

impose personal liability upon this defendant, and he should be dismissed as a

19

defendant from this action.

Defendant Owens asserts in his Motion to Dismiss other defenses, which appear to have merit.  However, because plaintiff has failed to allege personal participation by this defendant, and concedes that he cannot do so, I will not address these additional arguments.

**III.     Defendants Ortiz, Watkins, and Milburn's Motion To Dismiss.**

**A.     Standard of Review.**

Defendants Ortiz, Watkins and Milburn have requested dismissal of plaintiff's claims against them under Fed.R.Civ.P. 12(b)(6).  However, as did defendant Owens, they have raised the issues of sovereign and qualified immunity which are jurisdictional questions.  Accordingly, the defendants' arguments will be reviewed under the standards of Fed.R.Civ.P. 12(b)(1) and 12(b)(6) as appropriate.

**B.     Exhaustion of Administrative Remedies.**

In their motion, the defendants have requested dismissal of plaintiff's claim based on his failure to exhaust his administrative remedies.  In support of their position, defendants argue that plaintiff failed to file a Step II grievance, and violated the grievance procedure time constraints outlined in AR #850-04.

The Tenth Circuit has determined that the exhaustion provisions of 42 U.S.C. § 1997e(a) are not jurisdictional.  See Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1208-09 (10th Cir. 2003). The appellate court has also ruled, however, that the exhaustion requirement is not an affirmative defense, but instead, must be sufficiently pled and/or documented by an inmate in his Complaint and failure to do so is the same

20

as failing to state a claim upon which relief may be granted. Id. at 1209-10.

Plaintiff has raised allegations that he attempted to utilize the grievance procedure, but that the process was "unavailable" to him because although he attempted to file a Step II grievance on March 17, 2003, the grievance was lost, misplaced, or discarded by staff members. See AMENDED COMPLAINT, Docket #16, p. 6. He further alleges that Lt. Susan Butler (Case manager) advised him to proceed to the next level because the Step II grievance could not be located. Id. In an unpublished decision, the Tenth Circuit has found that under the plain meaning of the term "available," a prisoner must exhaust those procedures that he is reasonably capable of exhausting. Hoover v. West, 2004 WL 309338 (10th Cir. 2004) (citing Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998)).  This court must take into consideration the plaintiff's allegations that the prison frustrated or prevented him from utilizing the grievance procedure.  See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (holding district court erred in failing to consider prisoner's claim that he was unable to file a grievance, and therefore lacked available administrative remedies, because prison officials refused to provide him with the necessary grievance forms); see, also, Yousef v. Reno, 254 F.3d 1214, 1222 (10th Cir. 2001).

Plaintiff's allegations are accepted as true for purposes of a Rule 12(b)(6) Motion To Dismiss.  Since a factual dispute exists regarding plaintiff's access to the grievance process, resolution of this question under the standards of a summary judgment motion would be more appropriate.  Steele, 355 F.3d at 1212 (when a factual dispute concerning administrative exhaustion may preclude dismissal under Rule

21

12(b)(6), a motion for summary judgment limited to this narrow issue would then be appropriate).  Accordingly, defendants' request for dismissal in this regard should be denied.

### C.     Official Capacity Claims.

As discussed in connection with defendant Owens' dispositive motion, because the Eleventh Amendment would be a jurisdictional bar to a suit for damages against the State of Colorado, see  Will, 491 U.S. at 71, and defendants Ortiz, Watkins, and Milburn, in their official capacities, would be considered an arm of the state for Eleventh Amendment purposes, see Id. at 70-71, plaintiff's claims against them, in their official capacity, for damages are barred.  However, in the Amended Complaint, the plaintiff also seeks certain injunctive and declaratory relief.  Typically, when a private party sues a state officer for prospective injunctive or declaratory relief from an alleged ongoing violation of the Constitution or federal laws, the suit is not considered to be against the state itself and the Eleventh Amendment does not apply.  See Ex Parte Young, 209 U.S. at 159-60; see, also, Timpanogos Tribe, 286 F.3d at 1205.

However, "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot – i.e. where the controversy is no longer live and ongoing." Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 (10th Cir. 1994) (superceded by statute on other grounds as stated in Walker v. UPS Inc., 240 F.3d 1268, 1278 (10th Cir. 2001)).  A claim will be "deemed moot unless a proper judicial resolution settles some dispute which affects the behavior of the defendant toward the

plaintiff." <u>McAlpine v. Thompson</u>, 187 F.3d 1213, 1216 (10th Cir. 1999) (quotations omitted).

Plaintiff's claims against defendants Ortiz, Watkins, and Milburn uniformly pertains to alleged violations of his constitutional rights at LCF, where the plaintiff is no longer incarcerated.  An award of injunctive relief to remedy alleged inadequate conditions and constitutional violations at LCF would have no effect on defendants' behavior towards the plaintiff where he is currently incarcerated.  Plaintiff has not alleged facts indicating that he will be transferred back to LCF at some date in the future. <u>Id.</u> at 1217 (the hypothetical possibility that an inmate may be returned to the same prison cannot "save an otherwise moot claim for prospective injunctive relief relating to prison conditions").

The fact is that a party cannot maintain an action for declaratory or injunctive relief unless a substantial likelihood of being injured in the future is demonstrated. <u>Facio v. Jones</u>, 929 F.2d 541, 544 (10th Cir. 1991).  Plaintiff is no longer housed at LCF, and is no longer in contact with defendants Watkins or Milburn.  Under these circumstances, the award of injunctive relief in this regard would have no effect on the defendants' behavior towards him with regard to conditions at LCF.  <u>See</u> <u>Magee v. Waters</u>, 810 F.2d 451, 452 (4th Cir. 1987) (holding that a prisoner's transfer moots his request for injunctive relief in the facility from which he was transferred); <u>Martin v. Sargent</u>, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); <u>McKinnon v. Talladega County</u>, 745 F.2d 1360, 1363

23

(11th Cir. 1984) (holding that a prisoner's transfer to a different jail moots his claim for declaratory and injunctive relief even when prisoner argues that "there is no assurance that he will not be returned to the [first] jail"); *cf.* White v. State of Colorado, 82 F.3d 364, 366 (10th Cir. 1996) (holding that inmate plaintiff's claims for injunctive relief regarding conditions of confinement were mooted by his release on parole).  Further, there are no facts in the record to suggest that plaintiff's transfer was made for the purpose of evading the jurisdiction of this court.  See McKinnon, 745 F.2d at 1363.

Additionally, with regard to the injunctive relief requested by the plaintiff, even if he has characterized it as equitable in nature, the relief would require the expenditure of state treasury funds and "is the practical equivalent of money damages." ANR Pipeline, 150 F.3d at 1189.

Defendant Bauer has not yet been served in this matter, see Dockets #31 and #32, and plaintiff has not yet separately named the LCF Medical Department Personnel he seeks to hold liable in this suit.   However, lawsuits against prison officials in their official capacity necessarily raise issues of Eleventh Amendment or sovereign immunity which, in turn, causes this court concern regarding its subject matter jurisdiction over claims in such a suit.  The court has a duty to determine subject matter jurisdiction *sua sponte*.  See, Tuck, 859 F.2d at 844; see, also, Fed.R.Civ.P. 12(h)(3).  The analysis and reasoning behind dismissal of the official capacity claims against defendants Ortiz, Watkins, and Milburn are fully applicable to the remaining defendants who have not yet appeared.  Accordingly, plaintiff's claims for damages against the CDOC and LCF defendants in their official capacities are barred, and his claims seeking declaratory or

24

injunctive relief against the defendants in either their official or individual capacities are moot.  Accordingly, the claims should be dismissed.

**D.     Lack of Personal Participation by Defendants Ortiz and Watkins.**

Defendants Ortiz and Watkins, argue that the § 1983 claim against them must be dismissed because plaintiff has failed to allege any well-pled facts, or facts from which it can be inferred, to demonstrate they had any personal participation in the violation alleged in the Amended Complaint.  Defendants Ortiz and Watkins are named in Claim One of plaintiff's Amended Complaint, which asserts that he was housed under unsafe conditions in violation of the Eighth Amendment.

"Personal participation is an essential allegation in a § 1983 action."  Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976);  Massey v. Wilson, 484 F. Supp. 1332 (D. Colo. 1980).  A supervisor may not be held liable in a civil rights action merely because of his supervisory position.  Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986); Mckee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983).  Conclusory allegations are insufficient to warrant liability.  Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989); Cotner v. Hopkins, 795 F.2d 900, 902 (10th Cir. 1986); Wise v. Bravo, 666 F.2d 1328, 1332-33 (10th Cir. 1981).

A supervisor may be subject to liability under § 1983 if the plaintiff alleges and proves that there is an "affirmative link" between the supervisor's action or failure to act and the alleged constitutional violation.  McClelland v Facteau, 610 F.2d 693, 696 (10th Cir. 1979).  Such an affirmative link can be established by showing that the supervisory authority had some policy or custom which caused the alleged violation, or that the

supervisor's failure to establish procedures or to train and supervise personnel led to the violation.  Id.  When a supervisor has notice of misconduct, and fails to take action to correct the misconduct, the supervisor may be liable for civil rights violations which result.  McClelland, 610 F.2d at 697-98.

First, defendant Ortiz was Director of the DOC at the relevant times.  Plaintiff alleges that Ortiz is liable because, as Director, he is responsible for the overall direction and control of the DOC.  Defendant Ortiz's supervisory role as Director of the DOC, by itself, does not subject him to liability on any § 1983 claim plaintiff may have.

Second, plaintiff indicates that defendant Watkins is the warden of LCF, and is responsible for the daily operations of LCF, and training and supervision of LCF employees.  Attempts to impose liability under § 1983 based solely on the supervisory capacity of a defendant is not allowed, however, plaintiff does allege that he informed defendant Watkins both verbally and in writing of the dangerous living conditions in the housing pod in which he was held.  It is possible that plaintiff could prove facts, consistent with these allegations, which would show that this defendant was aware of the alleged danger and failed to take action to correct it.  Accordingly, for purposes of overcoming a dismissal pursuant to Rule 12(b)(6), plaintiff has sufficiently alleged the personal participation of defendant Watkins as to his Eighth Amendment failure to protect claim set forth at Claim One.

Defendant Watkins argues that if the allegations against him are found to meet the level of personal participation sufficient to overcome the standards of dismissal under Rule 12(b)(6), then – at best – he was informed of a dangerous environment at

26

LCF and not of a direct or immediate threat to the plaintiff.  Defendant cites to Sixth Circuit case law for this proposition.  However, the very case law cited by the defendant indicates that under Farmer v. Brennan, 511 U.S. 825 (1994), specific risk of danger particular to the individual is not required to state an Eighth Amendment failure to protect claim.  See Street v. Corrections Corporation of America, 102 F.3d 810, 815 (6th Cir. 1996).  A showing of a "pervasive risk of harm" is sufficient to state such a claim. Id.; see, also, Berry v. City of Muskogee, Okl., 900 F.2d 1489, 1498 (10th Cir. 1990).

While prison officials cannot absolutely guarantee the safety of their prisoners, the Eighth Amendment imposes a duty upon them to take reasonable measures to ensure their safety.  Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999) (citations omitted).  This duty includes the duty to protect prisoners from suffering harm at the hands of other prisoners.  Farmer, 511 U.S. at 833 (citations omitted).

To state a cognizable claim for failure to protect, a plaintiff must allege that: (1) he was incarcerated under conditions posing a substantial risk of serious harm to his safety; and (2) the defendants acted with deliberate indifference to that substantial risk, i.e., they knew of and disregarded the substantial risk of serious harm.  Id. at 834, 837. Deliberate indifference requires actual knowledge of the risk to the prisoner's safety. Id. at 837.  Viewing the plaintiff's Amended Complaint in a light most favorable to him, he states a claim for a violation of his Eighth Amendment rights against defendant Watkins based on a failure to provide for his safety sufficient to survive dismissal under Rule 12(b)(6).  Accordingly, defendants' motion in this regard should be granted with regard to defendant Ortiz, but denied with regard to defendant Watkins.

27

### E.     Qualified Immunity.

Public officials performing discretionary functions are accorded qualified immunity from liability.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for officials to lose their qualified immunity, their conduct must violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Id. Accordingly, individual defendants Ortiz and Watkins are entitled to qualified immunity if the plaintiff fails to establish a claim for violation of a constitutional right.

Even viewing the facts contained in the Amended Complaint in a light most favorable to the plaintiff, he has failed to demonstrate a viable claim for violation of a constitutionally protected right by defendant Oritz, and therefore, he is entitled to qualified immunity.  See Siegert v. Gilley, 500 U.S. 226, 233 (1991) (failure to make out a violation of a clearly established constitutional right is a failure to satisfy necessary threshold inquiry in determination of qualified immunity claim).  However, plaintiff has stated a viable claim against defendant Watkins, preventing the application of qualified immunity to the claims against him at this time.

### CONCLUSION

Based upon the foregoing, and the pleadings on file herein, it is hereby RECOMMENDED as follows:

1.      Defendant DeCesaro's Motion For Summary Judgment Or In The Alternative Motion To Dismiss Complaint [Filed February 3, 2005; Dockets #35-1 and #35-2] be **GRANTED**, and this action dismissed against him in his individual capacity only.

2.      Defendant Owens' Motion To Dismiss Defendant Owens Pursuant To Fed.R.Civ.P. 12(B)(6) [sic] [Filed February 22, 2005; Docket #44] be

**GRANTED**, resulting in the dismissal of this action, in its entirety, against defendant Owens.

3.      Defendants' Ortiz, Watkins, and Milburn's Motion To Dismiss Plaintiff's Complaint [Filed March 3, 2005; Docket #51] be **GRANTED** in part and **DENIED** in part, as set forth above, and resulting in:

   a.      Dismissal of this action, in its entirety, against defendant Ortiz.

   b.      Dismissal of this action against defendants Watkins, Bauer, Milburn, and LCF Medical Department Personnel in their official capacities.

   c.      Plaintiff being allowed to proceed with Claim One of his Amended Complaint seeking damages against defendant Watkins in his individual capacity.

Dated at Denver, Colorado, this 20th day of September, 2005.

                    BY THE COURT:


                    s/ O. Edward Schlatter

                    _____
                    O. Edward Schlatter
                    United States Magistrate Judge

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).