IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00977-ZLW-MEH

RICHARD STANLEY ROOT,

    Plaintiff,

v.

GARY WATKINS, in his individual capacity,
ALAN MILBURN, in his individual capacity,
ANTHONY A. DeCESARO, in his official capacity, and
JENNIFER ALLISON[1],

    Defendants.

## RECOMMENDATION ON DEFENDANT WATKINS' AND MILBURN'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Watkins' and Milburn's Motion for Summary Judgment [Docket #172]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, this matter has been referred to this Court for recommendation [Docket #173]. For the reasons set forth below, the Court recommends that the District Court **grant** Defendant's Motion and **dismiss** Defendants Watkins and Milburn from this action.

**I.   BACKGROUND AND FACTS**

Plaintiff's Amended Complaint includes claims against Defendants Watkins and Milburn in their official and individual capacities for violation of Plaintiff's Eighth and Fourteenth Amendment

---

[1] Defendant Jennifer Allison has not been served since being added to this case as a named Defendant on May 4, 2006. The Court also notes that Plaintiff consented to the dismissal of the two other named Defendants from the Limon Correctional Facility Medical Staff on September 5, 2006. Dock. #131.

rights in association with claims that these Defendants (1) disregarded injurious noise levels at the Limon Correctional Facility; (2) labeled Plaintiff a snitch after he complained about the noise; (3) failed to provide Plaintiff adequate medical care; and (4) denied him access to the courts when his administrative filings were found to be inadequate.

The material, undisputed facts for purposes of summary judgment are as follows.

### A.   Excessive Noise

In 2002, Plaintiff filed a federal civil rights action, Civil Action No. 02-cv-00531-ZLW, claiming, among other things, that noise levels at his correctional facility in Limon, Colorado were injurious, resulting in a deprivation of his Eighth Amendment rights to be free from cruel and unusual punishment. On September 5, 2006, Senior District Judge Zita Weinshienk entered summary judgment for the Defendants in that case on this claim. The entire case was dismissed with prejudice. Plaintiff has stated under oath in the current case that his complaints concerning noise are identical to those he made in the 02-cv-00531 lawsuit. For his exhaustion of administrative remedies on this claim, Plaintiff relies on the administrative process in which he engaged prior to the 02-cv-00531-ZLW case.

### B.   Labeled a Snitch

On February 23, 2003, Plaintiff talked with Defendant Milburn about excessive noise in his unit, asking him to take some action and warning Milburn that the noise would cause fights if something were not done. Sergeant Milburn came into Plaintiff's unit sometime shortly thereafter. Plaintiff was standing on the second tier landing in front of his cell when Milburn entered the unit. Milburn approached a group of white card players and talked to them. After talking with that group, Milburn approached a group of black card players and spoke with them. Several of the black card

players looked up at Plaintiff after Milburn motioned upward at him with his eyes. Approximately two days after these events, Plaintiff was pushed down a flight of stairs by an unidentified black inmate. There were other black inmates nearby at the time. Although Plaintiff does not know who pushed him, Plaintiff heard someone (also unidentified) say, "Are we making too much noise now white boy?" Plaintiff did not notify any officers after being pushed down the flight of stairs nor did he seek medical attention. Plaintiff believes he was pushed down the stairs because Milburn implied or stated that he had complained about the black card players making too much noise.

Plaintiff filed a Step I grievance regarding the Milburn incident, on February 28, 2003. The record shows that this was denied on March 10, 2003. Plaintiff acknowledged receipt of the response to his Step I grievance on March 13, 2003. After denial of his Step I grievance, Plaintiff testified that he filed a Step II grievance. Neither the Defendants nor the correctional facility have any record of a Step II grievance. Plaintiff states he filed his Step II grievance on March 17, 2003, but he did not retain a copy of the Step II grievance. Plaintiff says he turned in the grievance to one of the officers in Unit 1 after he got out of segregation; however, the grievance policy requires him to turn in grievances to his case manager.

Plaintiff states that after he did not receive a response to his Step II grievance, he went to his case manager, Susan Butler, who told him to proceed and file a Step III grievance. Plaintiff submitted his Step III grievance on or about May 3, 2003. Plaintiff received a response to his Step III grievance on May 16, 2003. The Step III grievance response states that after receiving Plaintiff's Step III grievance, the Step III grievance officer researched whether a Step II grievance had been filed and could find "no documentation that a step II was ever filed in this matter." The Step III grievance officer also found that under AR #850-04, Plaintiff's Step III grievance was too late. This

provision requires the institution to respond to a grievance within 25 calendar days, and a prisoner is required to file the next step in the grievance process within five days of receipt of that response. In this case, assuming Plaintiff filed a Step II grievance as he states (a fact unsupported by the record, except for Plaintiff's testimony), on March 17, 2003, a response would have been due from the institution by April 11, 2003, and a Step III grievance should have been filed by April 16, 2003. Plaintiff's Step III grievance was filed 17 days after this date.

Case managers are responsible for documenting grievances provided to inmates, grievances filed by inmates, and responses received to grievances filed by inmates. The case managers' documentation is contained in a computerized chronological report evidencing all inmate conduct. There is no documentation evidencing that Plaintiff filed a Step II grievance concerning the issue with Defendant Milburn. Case Manager Butler testified that it is her habit and practice to document all requests by inmates to obtain grievance forms, as well as all grievances filed by inmates, and all responses to inmate grievances received.

As noted above, Plaintiff did receive a response to his Step I grievance, on March 13, 2003. Pursuant to the grievance policy requiring inmates to file a subsequent step in the grievance process within five days of receipt of the previous response, his Step II grievance was due approximately March 18, 2003. Case Manager Butler has testified that she has no recollection of even discussing the issue with Plaintiff or providing him with forms.

After an inmate files his grievance, it is turned in to the Associate Warden's office whose Administrative Assistant III receives them, gives them a number, logs them into a computer system, and forwards them to the appropriate party to investigate and answer.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The non-moving party has the burden of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Id.* at 323; *Maldonado v. City of Altus*, 433 F.3d 1294, 1302 (10th Cir. 2006). If the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. *Hysten v. Burlington Northern and Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002); Fed. R. Civ. P. 56(e). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil

Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). Finally, "[t]he court views the record and draws all favorable inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1256 (10th Cir. 2005).

### B.     Res Judicata/Collateral Estoppel

*Res judicata*, or claim preclusion, applies to limit a party from bringing before the Court a matter that has already been addressed. *Red judicata* applies if (1) there was a final judgment on the merits in the earlier action; (2) the parties are identical or in privity in both cases; (3) the cause of action is the same; and (4) the plaintiff had a full and fair opportunity to litigate the claim in the prior suit. *Nwosun v. General Mills Restaurants*, 124 F.3d 1255, 1257 (10th Cir. 1997); *see also Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 n.4 (10th Cir. 1999) ("[T]he absence of a full and fair opportunity to litigate should be treated as an exception to the application of claim preclusion when three referenced requirements are otherwise present.").

It is clear to this Court that Plaintiff's claim regarding excessive noise is barred by *res judicata*. Senior District Judge Zita Weinshienk dismissed that claim on its merits in 02-cv-00531-ZLW. The only claim for excessive noise exhausted by the Plaintiff was done so in connection with that older lawsuit. Plaintiff cannot resurrect the claim by repackaging it in this lawsuit.

One of Plaintiff's arguments is that although very similar noise level claims were adjudicated in the prior lawsuit, the issue of Plaintiff's having brought the complaint to Warden Watkins, and Warden Watkins' failure to address the issue, was not litigated in that suit. To the extent that these allegations are different from Plaintiff's prior suit and administrative grievances filed prior to that suit,

6

they will be discussed below. Nevertheless, these allegations do not allow Plaintiff re-litigate allegations that have been dismissed with prejudice.

Plaintiff's counsel also argues that Plaintiff's clear, sworn testimony, stating that the noise claim in this action and that in 02-cv-00531-ZLW are identical, should not be held against him, because he was proceeding *pro se* at that time. The Court is aware of no precedent holding that a *pro se* litigant gets a mulligan on his prior testimony once he obtains counsel. *E.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury. . ."). It would be a very remarkable and dangerous ruling indeed for a federal court to find that a litigant's sworn, truthful testimony concerning certain facts should be permitted to be withdrawn by the litigant because he or she did not fully comprehend the effect that the facts would have on the case.

Plaintiff's next argument is that the events in the 2002 case and those in the present case cover a slightly different time period. The response to this argument is that the alleged "occurrences," noisy domino playing, are identical in both suits, qualitatively and quantitatively. Further, Plaintiff testified under oath in his deposition that the occurrences of noisy domino playing alleged in both cases are the same. As Defendants point out, the only factual difference between the occurrences in the present lawsuit and those in 02-cv-00531 is that the present lawsuit includes the additional allegation of a letter sent to Warden Watkins in February 2003, although not any additional allegations of noisy domino playing. Plaintiff may not, at this point, contradict his prior sworn testimony in opposing summary judgment.

> "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out

> sham issues of fact." *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). In *Van T. Junkins and Associates v. U.S. Industries,* 736 F.2d 656 (11th Cir.1984) the court recognized that an affidavit may be disregarded when it contradicts clear answers previously given in deposition testimony.

*Aircraft Sales of California, Inc. v. Insured Aircraft Title Service, Inc.*, No. 90-6125, 1991 WL 274101, *4 (10th Cir. 1991).

At least insofar as the current case involves allegations arising out of noisy domino playing, the claims are barred.

**C.     Exhaustion of Administrative Remedies**

As to Warden Watkins, no administrative claim in this action ever addressed Warden Watkins' inaction, or named him as a potential defendant, or described any actions which were wrongful. Plaintiff correctly quotes the Supreme Court decision in *Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910 (2007), to the effect that the Prison Litigation Reform Act of 1995 does not impose an explicit requirement that all defendants be named in an administrative claim. To the extent that Plaintiff's allegations against Warden Watkins are not barred by his original suit, they are also separate from the administrative grievances filed in support of those allegations. In this situation, when Plaintiff argues that the major distinction between nearly identical claims in a prior lawsuit and the current lawsuit is that the inaction of a specific defendant was not adjudicated in that prior suit, it appears to this Court that such specific defendant has to have been named in *some* administrative filing after that suit, in order to permit him to consider and perhaps correct his conduct. *See Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2385 (2006) ("Exhaustion gives an agency 'an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court,' and it discourages 'disregard of [the agency's] procedures.'") (citation omitted); *see also Kikumura v.*

8

*Osagie*, 461 F.3d 1269, 1286 (holding that exhaustion requires the prisoner's grievance to be sufficiently specific for officials to "recognize the need to investigate these claims").

Under Plaintiff's argument, prisoners would have the option, after exhausting their claims, of filing suit against some officials and waiting to see the outcome of that lawsuit before filing suit against other officials regarding the same incidents. Plaintiff cannot "have his cake and eat it too." Either the claims against Warden Watkins are part of his prior suit that has been dismissed, or his claims are distinct and require independent exhaustion. No such proof of exhaustion having been submitted here, the Court finds the failure to name Watkins in an administrative filing or describe the allegations against him fatal to Plaintiff's argument. Plaintiff never identified Watkins as a potential target of a constitutional claim or described the subject matter (the alleged wrongful conduct engaged in by Watkins) in any administrative filing. Thus, Plaintiff has not exhausted any claim as to Defendant Watkins.

Defendants further contend that Plaintiff failed to exhaust administrative remedies as to all claims not barred by *res judicata* by failing to file a Step II grievance and that, further, even if the Court finds a material factual issue in reliance on Plaintiff's statement that he did file a Step II grievance (although there is no record of such a filing), he waited too long to file his Step III grievance.

Based on the record here, if the Court were conducting a trial, the Court would find that Plaintiff did not file a Step II grievance. But that is not the applicable standard. It is Defendants' burden, as an affirmative defense, *see Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910 (2007), to establish that Plaintiff did not file a Step II grievance. It is true that all the documentary evidence points toward a failure to file a Step II grievance, and that the only direct evidence of such a filing

9

is Plaintiff's self-serving statement that he filed one. However, there is evidence in the record that it is possible for a grievance to be submitted by an inmate and to get lost in the system, and not make it into the written logs which track such things. If the Court views the evidence and draws reasonable inferences therefrom in the light most favorable to Plaintiff, as it must, *see, e.g., Stears v. Sheridan County Mem. Hosp Bd. of Trustees*, 491 F.3d 1160, ___ (10th Cir. 2007), then Plaintiff has created a triable issue concerning the *fact* of his having filed a Step II grievance.

However, concerning the *timeliness* of such filing, the Court is confronted with the following:

1. The prison's very detailed, very thorough tracking system for grievances shows no record here of any Step II grievance (although there is a record of every other grievance he ever filed).

2. The persons who would have participated in the chain of custody of any such grievance have submitted declarations that they recall no such grievance here.

3. Administrative Regulation 850-04 IV C.2.a. requires an inmate to attach a copy of all prior steps and responses, but Plaintiff did not submit a copy of his Step II grievance when he filed his Step III grievance (and the record establishes that he had the ability to retain a copy of his Step II grievance when he filed it). This regulation states that grievances submitted without a copy of a former step may be rejected and the finding of no exhaustion may be made.

4. Administrative Regulation 850-04 also requires that the grievance be filed with Plaintiff's case manager, or other staff member if designated by the administrative head. Plaintiff did not do so (testifying that he may have filed it with a unit officer). The Step I form explicitly directs Plaintiff: "If you are dissatisfied with the response to this Step 1 . . ., you may obtain further review by submitting the next step to your Case Manager or the Grievance Officer."

On top of the overwhelming evidence that no Step II grievance was ever filed (although, as noted above, not alone sufficient to grant summary judgment), and that, if filed, it was filed in several critical respects in violation of the rules, Plaintiff waited 47 days to file his Step III grievance, despite the fact that the facility was required to respond to the Step II grievance within 25 days of the

grievance form being received by the administrative head.

The Court finds that on this record, no reasonable factfinder could conclude that Plaintiff's Step III grievance was, in fact, filed *and* timely *and* in compliance with the prison's procedural rules. *E.g.*, *Schneider v. Ferguson*, No. 305-158, 2007 WL 1521610 *12 (S.D. Ga. May 23, 2007) ("Therefore, because Plaintiff has not demonstrated that he properly requested a 'pack-out' in accordance with the prison's policies, he has not established that he is entitled to relief on this claim."). Plaintiff was an experienced grievance filer and was familiar with the process. He knew the requirements of the regulations and violated them in several respects. Plaintiff bears the burden of pursuing his rights in compliance with the appropriate procedural rules. *Woodford*, ___ U.S. ___, 126 S. Ct. at 2385, 2389 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings. . . . A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . .").

The Court can find no reasonable argument for Plaintiff to wait 47 days to file a Step III grievance. While it is true that an inmate does not know when the administrative head received a grievance, it is worthwhile to note that Plaintiff's Step I grievance was denied (and received back by Plaintiff) within two weeks of Plaintiff submitting it. Here, Plaintiff waited seven weeks to submit a Step III grievance and, in doing so, failed to follow the procedural rules in several critical respects. Stacked against all the evidence of noncompliance with the exhaustion requirements, Plaintiff's self-serving statements concerning the filing of a Step II grievance are insufficient to create a material factual issue and withstand summary judgment.

> Neither "mere assertions and conjecture," *York v. AT & T Co.,* 95 F.3d 948, 955 (10th Cir.1996), nor "the existence of a scintilla of evidence in support of the nonmovant's position," *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997), is sufficient to show a genuine issue of material fact; "an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant," *id.*

*Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006).  The Court understands that there is a fine line between weighing the evidence (which is improper for the Court) and determining, as a matter of law, that there is insufficient evidence for a genuine jury issue (which is the Court's rightful duty).  However, this Court is not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof. . . . [The question is] not whether there is literally no evidence [supporting the nonmoving party], but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  The evidence concerning Plaintiff's explanation for the belated Step III grievance does not support a genuine jury question.

Accordingly, Plaintiff's failure to follow the procedural rules for filing a grievance, including filing in a timely manner, mandates a finding of failure to exhaust available administrative remedies for purposes of summary judgment.

### D. Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983, unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Here, Defendant Watkins contends that Plaintiff has not stated a claim that

Watkins personally participated in a deprivation of Plaintiff's constitutional rights. In response, Plaintiff points out several respects in which Plaintiff warned Watkins of the potential for fights due to the noisy domino playing. Defendant Watkins does not effectively rebut this argument in his reply, and the Court believes that Plaintiff has stated a sufficient ground for Watkins' personal involvement in the injury alleged here. Therefore, the Court recommends that summary judgment be denied on the issue of qualified immunity due to a lack of personal participation.

### E.     Personal Injury Requirement

Defendant Watkins alleges that any personal injury received by Plaintiff was associated with the claim against Defendant Milburn related to labeling Plaintiff a snitch, but not with Watkins' alleged refusal to do anything about loud domino playing. Thus, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), the claim against Watkins must be dismissed. The Court disagrees. Plaintiff allegedly warned that there would be fights because of the loud domino playing. Plaintiff alleges that at the time he was pushed down a flight of stairs by a black inmate, that inmate asked whether they were "making too much noise now white boy." The injury occurred because of an altercation which occurred because of the loud domino playing. This is the harm about which Defendant Watkins was warned. The Court does not believe that there is a material difference between Plaintiff confronting the loud domino players directly and suffering an injury as a result, and Plaintiff doing so indirectly (through Defendant Milburn) and suffering an injury as a result. In either event, the loud domino playing was the precipitating event behind the injury. Thus, Plaintiff has established sufficient nexus between Defendant Watkins' failure to respond and Plaintiff's injury, and the Court recommends that summary judgment be denied on this ground.

### III.  CONCLUSION

For the reasons stated above, the Court RECOMMENDS that Defendants Watkins' and Milburn's Motion for Summary Judgment [Filed May 15, 2007; Docket #172] be **granted** on the basis of *res judicata* and Plaintiff's failure to exhaust administrative remedies as to all claims not barred by *res judicata* and that Defendants Watkins and Milburn be **dismissed** from this action. Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.[2]

Dated at Denver, Colorado this 28th day of August, 2007.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[2] The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).